IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division



RITA WEINTRAUB and )
BARRY WEINTRAUB, )
          Plaintiffs, )
v. )    Civil Action No. 08-278
QUICKEN LOANS, INCORPORATED, )
          Defendant. )

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment. Plaintiffs, Rita Weintraub and Barry Weintraub, remitted to Defendant, Quicken Loans, Inc., a deposit in connection with their application for refinancing of their principal residence. Plaintiffs claim that Defendant's failure to refund that deposit in full, within 20 calendar days of receiving Notices of Right to Cancel executed by Plaintiffs, violates 15 U.S.C. § 1635(b) of the Truth in Lending Act ("TILA"). 15 U.S.C. §§ 1601 et seq.

In February 2008, Plaintiffs, a married couple, sought to refinance their principal residence in Stafford County, Virginia. They applied for a home loan with Defendant, a mortgage lender whose business includes refinancing existing home loans.

Plaintiffs sought to borrow $218,000.00 for the refinancing, which would have resulted in a first lien mortgage on Plaintiffs' residence.

On or about February 1, 2008, following a telephone interview to gather financial information for the proposed loan, Defendant generated and provided to Plaintiffs two documents related to the refinancing application -- a Good Faith Estimate and a document titled "Interest Rate Disclosure - (Not Locked) and Deposit Agreement" ("Interest Rate Disclosure Agreement").

The Good Faith Estimate stated that the proposed loan was for 30 years at a fixed interest rate. Based on information provided to Defendant by Plaintiffs, Defendant estimated the value of Plaintiffs' residence to be $340,000.00.

The Interest Rate Disclosure Agreement also referenced a 30-year loan, but it did not state either the amount of the loan or the interest rate. Although the final interest rate on the loan would be fixed for the life of the loan, Defendant did not provide a "locked-in" interest rate during the application process.

Included in the Interest Rate Disclosure Agreement was a Deposit Agreement. Defendant required a $500.00 deposit as part of the application for refinancing, and on February 5, 2008, Plaintiff remitted this fee. The Deposit Agreement governed this deposit and stated:

> If your application is approved: At the closing, Lender will credit the amount of your deposit on your closing statement toward your closing costs. If your application is denied: Lender will refund the deposit less the actual amount of out-of-pocket costs incurred on your behalf for, among other items, the cost of an appraisal and/or credit report. A conditional approval or request for additional information is not a denial. The deposit will **not** be refunded if you don't fully cooperate in or complete the application process (including submitting all required documentation in a timely manner), choose to withdraw your application, or choose not to close the transaction for any reason (including changing interest rates).

The Deposit Agreement concluded with the reminder that "[t]his Agreement is not a commitment to lend by lender or an underwriting approval of your loan application." (capitalization and emphasis removed).

On February 4, 2008, Mr. Weintraub electronically signed these documents. Defendant then conditionally approved a loan for Plaintiffs in the amount of $220,000.00 for 30 years at a fixed interest rate. Defendant communicated this approval to Plaintiffs by letter. That letter also informed Plaintiffs that to complete the application Defendant would obtain a third party appraisal of Plaintiffs' residence. Following completion of the application, Defendant would conduct a final review and, if approved, schedule a closing.

On February 7, 2008, Appraisal One, a third party appraisal service, conducted an appraisal of Plaintiffs' residence at Defendant's request. Appraisal One estimated the value of Plaintiffs' house to be $308,000.00. This estimate was

$32,000.00 less than the value assumed in the Good Faith Estimate.

After this lower-than-anticipated appraisal, Defendant added a half-point adjustment to the loan. Defendant had not included this half-point in the original loan documents because the proposed loan of $220,000.00 was less than 70 percent of the $340,000.00 initial estimate of the house's value. Following the third party appraisal, however, the proposed loan of $220,000.00 exceeded 70 percent of the appraised value of the house securing the loan, and Defendant added this half-point adjustment. On February 18, 2008, Defendant provided Plaintiffs with closing documents reflecting this half-point adjustment. In the Settlement Statement, Defendant included it as a "Settlement Charge," labeled a "Loan Discount Fee" payable to Defendant. The closing was scheduled for February 26, 2008.

On or about February 18, 2008 Defendant also provided Plaintiffs with a Federal Truth-in-Lending Statement and Notices of Right to Cancel. The Truth-in-Lending Statement began with a reminder that "[t]HIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND." The Notices of Right to Cancel stated:

> You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:
> (1) The date of the transaction, which is February 26, 2008; or
> (2) The date you received your Truth in Lending

>                disclosures; or
> (3) The date you received this notice of your
>     right to cancel.
>
> If you cancel the transaction, the
> mortgage/lien/security interest is also cancelled.
> Within 20 CALENDAR DAYS after we receive your notice,
> we must take the steps necessary to reflect the fact
> that the mortgage/lien/security interest on/in your
> home has been cancelled, and we must return to you any
> money or property you have given to us or to anyone
> else in connection with this transaction.

On February 18, 2008, following receipt of these Notices of Right to Cancel, Plaintiff, Barry Weintraub, spoke on the telephone with Defendant about the half-point adjustment to the loan. Dissatisfied with this change, Plaintiffs signed the Notices of Right to Cancel. On or about February 20, 2008, Plaintiff, Rita Weintraub, sent the Notices to Defendant by mail and fax, accompanied by a cover letter asking for a full refund of the $500.00 deposit that Plaintiffs remitted with their original application.

On February 20, 2008, Defendant denied Plaintiffs' request for a full refund of their deposit. The Deposit Agreement did not provide for a refund in the event of a withdrawn application or failure to close the transaction. Nonetheless, after subtracting $350.00 for the cost of the third party appraisal and $20.59 for a third party credit report, Defendants did provide Plaintiffs with a partial refund of $129.41.

Summary judgment is appropriate where there is no genuine issue as to any material fact. See Fed. R. Civ. P. 56(c). Once

a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). A material fact in dispute appears when its existence or non-existence could lead a jury to different outcomes. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When a motion for summary judgment is made, the evidence presented must always be taken in the light most favorable to the non-moving party. See Smith v. Va. Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1996) (en banc).

There are no material facts in dispute in this case. Plaintiffs seek a judgment from this Court that they properly rescinded a consumer credit transaction covered under TILA, and that Defendant violated TILA by failing to return all of Plaintiffs' deposit within 20 calendar days of receipt of those Notices. 15 U.S.C. § 1635(a)-(b). Defendant seeks a judgment that TILA does not apply to the facts of this case, that Plaintiffs withdrew their loan application prior to closing, and that there was never a consummated consumer transaction, which is

a condition precedent for TILA to apply.

TILA promotes the "informed use of credit result[ing] from an awareness of the cost thereof by consumers." 15 U.S.C. § 1601(a). TILA's purpose is:

> to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . .

Id. To that end, TILA regulates numerous types of consumer credit transactions, including those where residential financing is secured through a security interest in real property. 15 U.S.C. §§ 1603(1), (3).

The Board of Governors of the Federal Reserve System (the "Board") has significant responsibilities for enforcing TILA. TILA requires the Board to "prescribe regulations to carry out the purposes" of TILA. 15 U.S.C. § 1604(a). The Board has enacted regulations pursuant to this statutory duty, 12 C.F.R. Pt. 226, commonly referred to as "Regulation Z." 12 C.F.R. § 226.1(a). In addition to these regulations, the Board publishes its Official Staff Interpretations ("Staff Commentary") of TILA as Supplement I to Regulation Z. 12 C.F.R. Pt. 226, Supp. I.

The Supreme Court has held that the Board is the primary source for the interpretation and application of TILA. Household Credit Servs., Inc. v. MBNA Am. Bank, N.A., 541 U.S. 232, 238-39 (2004). The Board's regulations and Staff Commentary are "dispositive" unless "demonstrably irrational." Cades v. H & R

Block, Inc., 43 F.3d 869, 875 (4th Cir. 1994), cert. denied, 515 U.S. 1103 (1995) (citing Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565 (1980)).

Plaintiffs' claim relies on a provision of TILA establishing a right under certain circumstances to rescind a "consumer credit transaction." 15 U.S.C. § 1635(a). TILA states:

> Except as otherwise provided in this section, in the case of any consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title . . . , whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

Id. The threshold question is whether there was a "consumer credit transaction" in this case that would give rise to the right to rescind. Plaintiffs contend that there was, arguing that a "consumer credit transaction" need not be a consummated loan to be eligible for rescission under TILA.

Plaintiffs' interpretation is contrary to TILA, Regulation Z, the Staff Commentary, and applicable case law, all of which demonstrate that the right to rescind under TILA requires a consummated consumer credit transaction. TILA provides consumers with the right, under certain circumstances, to unwind a completed credit transaction. In this case, where a refinancing

application was withdrawn prior to closing, there was no completed credit transaction to unwind. Consequently, Plaintiffs had no right to rescind under TILA. Nor do they have a right to have their deposit returned.

TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of a debt or to incur debt and defer its payment." 15 U.S.C. § 1602(e). For TILA, "credit" means an actual granting of credit as opposed to the proposed granting of credit.

TILA does not define the term "transaction." The word is used, however, as part of two other defined terms in TILA, and each of these defined terms treats a "transaction" as a consummated event. For example, a "residential mortgage transaction" means a transaction in which a security interest "is created or retained against a consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(w). Similarly, a "reverse mortgage transaction" is a nonrecourse transaction in which a "mortgage, deed of trust, or equivalent consensual security interest is created against the consumer's principal dwelling . . . ." 15 U.S.C. § 1602(bb).

TILA's explanation of the effect of a "rescission" on the legal obligations of the parties also shows that only completed credit transactions are eligible for rescission. 15 U.S.C. § 1635(b). Following a rescission, any security interest given by

the borrower becomes void and the borrower is no longer liable for any finance charges or other charges. 15 U.S.C. § 1635(b). The lender, meanwhile, must return any down payment and take steps to terminate the security interest in the property. Id. Given the impact of a rescission on the obligations of the parties, the terms "rescind" and "rescission" again confirm that for TILA a completed transaction is a precondition for rescission.

Federal courts, including this Circuit, have held that a consummated loan transaction is essential to the creation of TILA liability. Nigh v. Koons Buick Pontiac GMC, Inc., 319 F.3d 119, 123 (4th Cir. 2003), rev'd on other grounds, 543 U.S. 50 (2004); Harman v. N.H. Sav. Bank, 638 F.2d 280, 282 (1st Cir. 1981); Baxter v. Sparks Oldsmobile, Inc., 579 F.2d 863, 864 (4th Cir. 1978).

For example, in Baxter the Court held that a "credit transaction" required the actual extension of credit to the borrower. Baxter, 579 F.2d at 864 (4th Cir. 1978). In Baxter, the Plaintiff signed a purchase order for a car and the parties "contemplated that credit would be arranged through a third party . . . ." Id. Even though there was a signed purchase order, there was no actual extension of credit, and the Court held that "the Truth in Lending Act does not impose penalty until credit is in fact extended." Id.

This Circuit has held that a consumer credit transaction is consummated under TILA when there is a contractual obligation by the lender to lend and the borrower to borrow, as determined by state law. Cades v. H & R Block, Inc., 43 F.3d 869 (4th Cir. 1994). In Cades the Court noted that pursuant to Regulation Z, TILA disclosures had to be given to the consumer before "consummation of the transaction." Id. at 876 (citing 12 C.F.R. § 226.17(b)). The Court then held that merely signing a loan application did not consummate a transaction and trigger TILA's disclosure requirements. Id. Rather, consummation occurs when the consumer "becomes contractually obligated on a credit transaction." Id. (citing 12 C.F.R. § 226.2(a)(13)).

Under TILA, state law determines whether a contract has formed. In Cades, under the applicable state law, the Court determined that the loan application did not commit the applicant to borrow the funds. Cades, 43 F.3d at 876 (citing 12 C.F.R Pt. 226, Supp. I (Official Staff Interpretations to para. 2(a)(13), cmt. 1-2)). The Supreme Court of Virginia, in construing the word "consummate" as used with a contract, has applied its "plain, ordinary meaning," which is "to bring to completion." GSHH-Richmond, Inc. v. Imperial Assocs., 480 S.E.2d 482, 485 (Va. 1997).

It is clear from TILA, as well as the regulations and case law interpreting it, that the right to rescind under 15 U.S.C. §

1635(b) requires a consummated consumer credit transaction. In the context of an application for refinancing of a home loan, consummation occurs at closing, when a contractual obligation to borrow and lend arises. There was no closing in this case. Plaintiffs withdrew their application prior to the extension of credit and Defendant never filed any papers, including papers claiming a lien on the property, with any court. One of the prerequisites for a rescission under TILA - a consummated consumer credit transaction - is absent in this case.

Plaintiffs argue that consummation of a credit transaction is not a precondition for rescission and interpret TILA as establishing a right to rescind following either a consummated credit transaction or the creditor's delivery of a Notice of Right to Cancel and Truth in Lending Disclosures to the borrower. Plaintiffs contend, therefore, that they properly rescinded by transmitting Notices of Right to Cancel to Defendant before midnight of the third day following their receipt of those notices.

This interpretation of the timing of a rescission is inconsistent with TILA, which clearly states that the three day rescission period begins after consummation of the transaction, delivery of the Notice of Right to Cancel, or delivery of the Truth in Lending Disclosures, "whichever is later." 15 U.S.C. § 1635(a). Each of these three events must occur before the three-

day rescission period begins to run. Santos-Rodriguez v. Doral Mortgage Corp., 485 F.3d 12, 14 (1st Cir. 2007) ("This three-day rescission period begins to run when the transaction is consummated or upon delivery of notice of the consumer's right to rescind, whichever occurs later.").

Regulation Z and the Staff Commentary confirm TILA's intent that all three events, including consummation of the transaction, occur before the right to rescind begins. Regulation Z does this with the clause, "whichever occurs last." 12 C.F.R. § 226.23(a)(3). The Staff Commentary clearly states, "[t]he period within which the consumer may exercise the right to rescind runs for 3 business days from the last of 3 events . . . ." 12 C.F.R. Pt. 226, Supp. I (Official Staff Interpretations to para. 23(a)(3), cmt. 1). It then provides several examples of these events happening in different orders to explain how to calculate the three day rescission period in these different situations. In each of the examples, the rescission period starts only after the last of these three events has happened. Id. Finally, Regulation Z's Model Form, with which Defendant's Notice of Right to Cancel complied in all respects, demonstrates the necessity of consummation by stating that rescission is permitted "within three business days from whichever of the following events occurs last . . . ." 12 C.F.R. Pt. 226, App. H-8.

The Board's interpretation of TILA is consistent with TILA's

13

pro-consumer purposes. Under TILA, if the required disclosure and documents are not provided to the consumer, the rescission period may not start for up to three years after the transaction. 15 U.S.C. § 1635(f).

Having determined that a consumer credit transaction is a precondition for exercising the right to rescission under TILA and that no such transaction existed here, Plaintiffs' other arguments are moot. Plaintiffs argue that once they rescinded their agreement, Defendant was obligated to return the entire deposit, including any "appraisal fee," within 20 days. 15 U.S.C § 1635(b); 12 C.F.R. Pt. 226, Supp. I. (Official Staff Interpretations to para. 23(d)(2)). They also argue that the Interest Rate Disclosure Agreement did not modify or waive their rescission rights since under TILA the right to rescind a loan agreement cannot be wavied except for a "bona fide personal financial emergency" and with a properly signed and dated declaration describing the emergency and waiving the right to rescind. 15 U.S.C. § 1635(d); 12 C.F.R. § 226.23(e).

Absent a consummated consumer credit transaction to rescind, however, these questions - whether appraisal fees are refundable following a rescission and whether Plaintiffs waived rescission rights - are moot. TILA, as well as the Board's regulations and Staff Commentary interpreting and enforcing it, all demonstrate that a consummated consumer credit transaction is a prerequisite

14

for a rescission under 15 U.S.C. 1635(a). There is no such transaction here since Plaintiffs withdrew their application prior to closing, credit was never extended by Defendant, and the contemplated refinancing of Plaintiffs' home never took place.

Without these conditions for a rescission, the legal obligations associated with a rescission do not exist. Plaintiffs do not have a right to a full refund of their deposit, and Defendant did not violate TILA by failing to return all of Plaintiffs' deposit within 20 calendar days of receipt of those Notices.

For the reasons stated above, Defendants are entitled to summary judgment.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
February 5, 2009